# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

EDITH M. BUDIK, M.D.,

     Plaintiff,

    v.

DEPARTMENT OF THE ARMY,

     Defendant.

Civil Action No. 09-01518 (CKK)

## MEMORANDUM OPINION
(September 30, 2010)

In this action brought *pro se* under the Freedom of Information Act ("FOIA"), 5 U.S.C. §
552, Plaintiff Edith M. Budik, M.D. ("Plaintiff") challenges the responses of Defendant
Department of the Army ("Defendant") to her requests for information relating to her former
employment at Landstuhl Regional Medical Center ("LRMC"). Specifically, at issue in this
action are two separate FOIA requests lodged by Plaintiff with Defendant in August and
September 2008.[1] Initially, Plaintiff sought a single document relating to her performance while
employed at LRMC. Defendant produced the document, in redacted form, and Plaintiff now
challenges only the propriety of Defendant's redactions. Subsequently, Plaintiff made a broader
request for her personnel records. Defendant conducted a search for responsive materials,
ultimately producing a number of documents; a subset of these documents were redacted and

---

[1] In the months that followed, Plaintiff would occasionally amend or clarify her requests
in certain respects. In each instance, Defendant incorporated Plaintiff's amendments into the
scope of its search for responsive documents, and the effect of the amendments and clarifications
is not in dispute in this action. Accordingly, for purposes of clarity, the Court will simply refer to
Plaintiff's "first FOIA request" and "second FOIA request," mindful that a more fulsome
treatment may very well be appropriate in other contexts.

others were withheld in their entirety. Construing Plaintiff's submissions liberally, Plaintiff here

challenges both the adequacy and good faith of Defendant's search, as well as the propriety of

Defendant's decision to redact and withhold various documents. Presently before the Court is

Defendant's [9] Motion for Summary Judgment, which Plaintiff has opposed. After reviewing

the parties' submissions, including the attachments thereto, the relevant authorities, and the

record as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART Defendant's Motion

for Summary Judgment, for the reasons set forth below.

## I. BACKGROUND

A.    *Factual Background*[2]

1.    Plaintiff's First Request: The Professional Practice Evaluation

On August 13, 2008, Plaintiff contacted LRMC – where she was employed for a period of

time in 2008 – requesting the production of a "document written on [her] behalf and faxed on 30

June 2008 for a position at Dartmouth Hitchcock Medical Center." Def.'s Stmt. ¶ 3. Plaintiff's

request was forwarded to Ralph G. England, a FOIA Officer responsible for handling certain

information requests filed with LRMC. *Id.* ¶ 4; England Decl. ¶ 1. Shortly thereafter, Mr.

England personally obtained a copy of the three-page document referenced in Plaintiff's request

– a Professional Practice Evaluation ("PPE") – from the office of Col. Steven Princiotta, the

---

[2] The Court observes that Plaintiff was informed of the requirements of Fed. R. Civ. P.
56 in the Court's *Fox/Neal* Order. *See* Oct. 19, 2009 Order, Docket No. [10]. Thus,
notwithstanding the principle that a *pro se* litigant's submissions are to be liberally construed, the
Court may accept as true the unchallenged factual assertions in Defendant's Statement of
Material Facts Not in Dispute ("Def.'s Stmt."), Docket No. [9-2]. Nevertheless, in an exercise of
its discretion, the Court has independently reviewed the entire record to confirm that there is
adequate support for Defendant's submissions. The Court will also refer to Plaintiff's Rebuttal
to Defendant's Motion for Summary Judgment ("Pl.'s Stmt."), Docket No. [11], where
appropriate.

Deputy Commander for Clinical Services at LRMC. England Decl. ¶ 5. Mr. England sent Plaintiff a copy of the requested PPE on September 3, 2008, albeit redacting the signature block and the e-mail address from the final page of the document pursuant to FOIA Exemption (b)(6). Def.'s Stmt. ¶ 6.

Dissatisfied, Plaintiff subsequently requested an unredacted version of the PPE. *Id.* ¶¶ 7-8. Plaintiff's follow-up request was forwarded to the FOIA Office for U.S. Army Medical Command ("MEDCOM") for further review.[3] *Id.* ¶¶ 9-10. Upon reviewing the record, MEDCOM determined that the signature block was "releasable," but concurred that the e-mail address appearing on the final page had been properly redacted pursuant to Exemption (b)(6). *Id.* ¶ 12. Accordingly, on October 30, 2008, Defendant released to Plaintiff the contents of the signature block. *Id.* Although Plaintiff was informed that she could further appeal the determination, no appeal has been received.[4] *Id.*

2.      Plaintiff's Second Request: Personnel Records

On September 8, 2008, Plaintiff contacted Mr. England with a second FOIA request, this time seeking "a copy of [her] complete personnel file, i.e. a copy of any and all records related to [her] employment at [LRMC] to include documents, computer files, and [e]-mails." *Id.* ¶ 13.

---

[3] The Court notes that Defendant's submissions, apart from specifying that Defendant is a component of the Department of Defense, hardly illuminate the relationship between the various units involved in responding to Plaintiff's requests for information. While a complete understanding of those relationships is ultimately unnecessary for purposes of deciding the present motion, Defendant would do well to consider including such information in future submissions, if any.

[4] On more than one occasion, the record suggests that Plaintiff neglected to formally appeal certain aspects of Defendant's response to her requests. However, because Defendant has not argued that summary judgment is appropriate based on Plaintiff's failure to exhaust her administrative remedies, the Court does not address the issue here.

Mr. England promptly reached out to Plaintiff, asking her to provide any additional information that would assist in locating the requested documents and requesting clarification as to whether Plaintiff sought e-mails maintained outside her personnel file. *Id.* ¶¶ 13-14; England Decl. ¶¶ 11-12 and Ex. I. After further dialogue ensued between Plaintiff and Mr. England, Def.'s Stmt. ¶¶ 14-16, Plaintiff's second FOIA request, in its final form, sought "a copy of [her] complete personnel records to include any and all documents and records related to [her] employment at [LRMC], to include documents, computer files, [f]axes, and any [e]-mails in these records." England Decl. Ex. L. By its terms, the request extended to "records housed in the personnel section, [her] duty section (radiology), and any and all documents from Dr. [Brian] Lein and Dr. [Steven] Princiotta."[5] *Id.*

a.     Defendant's Initial Search

Mr. England coordinated the search for documents responsive to Plaintiff's second FOIA request. Def.'s Stmt. ¶¶ 13-21. In so doing, he contacted the Commander of LRMC, the Deputy Commander for Clinical Services, Pathology, the Radiology Department, the Personnel Division, Operations, Credentials, and the former Chief of Radiology requesting information pursuant to Plaintiff's request. *Id.* ¶ 18; England Decl. ¶ 13.

After learning that no one then working at LRMC's Radiology Department had any knowledge of existing records relating to Plaintiff, Mr. England reached out to Plaintiff's former supervisor, Col. Ricanthony Ashley, inquiring whether the Radiology Department maintained a file for Plaintiff. Def.'s Stmt. ¶ 17; England Decl. ¶¶ 18-19. Although Col. Ashley indicated that

---

[5]  In addition, while Defendant's search for responsive documents was ongoing, Plaintiff wrote Mr. England reaffirming that her request extended to records maintained by LRMC Radiology and Drs. Lein and Princiotta. England Decl. Ex. O.

"a very small file" had once existed, after speaking directly with Col. Ashley, the Chief of Radiology conducted a further search of the Radiology Department, but was unable to find any documents relating to Plaintiff. *Id.*

Ultimately, Mr. England was able to retrieve one hundred and thirty-two (132) pages of documents responsive to Plaintiff's requests. Def.'s Stmt. ¶ 17; England Decl. ¶ 20. These 132 pages comprised the only documents maintained by LRMC that were responsive to Plaintiff's request. *Id.*

### b. The LRMC Documents

Of the 132 pages located during the course of Defendant's search, 108 "belonged" to LRMC, in the sense that the documents did not originate from other units. England Decl. ¶ 20. On November 20, 2008, Defendant released to Plaintiff all 108 pages, which included Officer Evaluation Reports, Plaintiff's orders, memoranda, a letter of reprimand, a rebuttal to the reprimand, and various e-mails (the "LRMC Documents"). Def.'s Stmt. ¶ 18.

Approximately 57 of the 108 pages produced by Defendant were redacted.[6] Pl.'s Stmt. ¶ 1; England Decl. ¶ 21. Some documents were redacted to remove "third-party personal information" pursuant to FOIA Exemption (b)(6). Buchholz Decl. ¶ 6; England Decl. ¶ 21;

---

[6] While Defendant's submissions do not specify the number of documents redacted, Plaintiff avers that 57 of the 108 pages produced "had been redacted to the extent that they are blank pages." Pl.'s Stmt. ¶ 1. Defendant does not directly dispute Plaintiff's figure, electing instead to paint Plaintiff's statement as "conclusory" to the extent it can be read to allege that all 57 pages were *improperly* redacted. Def.'s Reply Mem., Docket No. [12], ¶ 1. Because Defendant has failed to put forth any evidence contradicting Plaintiff's figure, and because this Court must afford Plaintiff a certain solicitude as the non-moving party, the Court will accept as true for purposes of this motion that otherwise responsive information was redacted from a total of 57 pages. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (all underlying facts and inferences are analyzed in the light most favorable to the non-moving party).

Vaughn-Burford Decl. ¶ 6. Specifically, Defendant withheld the names and e-mail addresses of certain individuals, concluding that the disclosure of such information would threaten the individuals' privacy interests. Buchholz Decl. ¶ 18. Yet other redactions were made to e-mail correspondence relating to an "incident" involving Plaintiff, correspondence which purportedly discussed what the response to that incident would be from Plaintiff's chain of command. Buchholz Decl. ¶¶ 11-12; England Decl. ¶ 21; Vaughn-Burford Decl. ¶ 6. Defendant claims that the e-mail correspondence concerning the incident was properly redacted under FOIA Exemption (b)(5). *Id.*

c. Plaintiff's Appeal and Defendant's Supplemental Search

Plaintiff was informed that she could appeal Defendant's redaction decisions concerning the LRMC Documents, a right which Plaintiff exercised on January 6, 2009. Def.'s Stmt. ¶¶ 18-20. In a letter of appeal, Plaintiff argued, among other things, that the information she requested was outside the scope of any of FOIA's exemptions, and asserted "the right to know why any exemption [was] being applied specifically in [her] case." England Decl. Ex. V.

In addition, Plaintiff noted in her appeal that there appeared to be a lack of documentation produced from the period extending from May 2008 through June 2008, and requested that Defendant conduct an additional search for documents originating from Drs. Lein and Princiotta within that time period. *Id.* Upon receiving Plaintiff's appeal, Mr. England asked Drs. Lein and Princiotta to conduct a further search of their computers for any e-mails pertaining to Plaintiff in the designated time period. England Decl. ¶ 28. The supplemental search failed to yield any

additional documents.[7]  Def.'s Stmt. ¶ 21; England Decl. ¶ 28.

In the meantime, Plaintiff's appeal was forwarded to Human Resource Command and, thereafter, to the Office of the General Counsel at the Pentagon.  Def.'s Stmt. ¶¶ 23-24.  Both offices reviewed Plaintiff's file and the documents at issue, and concurred that the LRMC Documents had been properly redacted.  *Id.* ¶¶ 25, 27-28.

### d.    The MEDCOM Documents

As described above, only 108 of the 132 pages located during the course of Defendant's search "belonged" to LRMC.  The remaining documents were referred out to four separate units – MEDCOM, the 21st Theater Sustainment Command ("21st TSC"), the Walter Reed Army Medical Center ("WRAMC"), and United States Army Europe ("USAREUR") – as the e-mails were to or from personnel assigned to those units and not LRMC.  Of the twenty four (24) pages within this group, six (6) were sent to MEDCOM for review (the "MEDCOM Documents").  *Id.* ¶ 29.

On December 23, 2008, following MEDCOM's review, Defendant released to Plaintiff additional documents responsive to Plaintiff's second FOIA request.[8]  *Id.* ¶ 30.  Defendant

---

[7]  This outcome was unsurprising since, as Plaintiff points out, she completed her voluntary mobilization at LRMC on March 4, 2008.  Pl.'s Stmt. ¶ 6.

[8]  Plaintiff contends that there is "conflicting information" as to the total number of documents produced by Defendant in response to Plaintiff's second FOIA request.  Pl.'s Stmt. ¶ 1.  The Court agrees.  For instance, the record does not indicate how many of the six pages referred to MEDCOM and the eight pages referred to WRAMC were ultimately disclosed to Plaintiff, though it appears that at least some pages were disclosed from both sets of documents.  Peterson Decl. ¶¶ 8-9, 14-15.  Although Plaintiff concedes that she received the 108 pages of documents produced by Defendant in November 2008 (*i.e.*, the LRMC Documents), she avers that she only received six additional pages thereafter.  Pl.'s Stmt. ¶ 1.  Based on the record before it, the Court simply has no way of knowing how many pages were ultimately disclosed or from which unit they originated.

withheld and/or redacted information pursuant to Exemptions (b)(5) and (b)(6), though it is by no means clear from the record how much information was withheld and/or redacted. *Id.*; Buchholz Decl. ¶ 9; Peterson Decl. ¶¶ 8-9. As with the LRMC Documents, the names and e-mail addresses of certain individuals were withheld and/or redacted to remove "third-party personal information" pursuant to Exemption (b)(6). Buchholz Decl. ¶¶ 16, 18. Other information was withheld and/or redacted from e-mail correspondence relating to an "incident" involving Plaintiff, correspondence which purportedly discussed what the response to that incident would be from Plaintiff's chain of command. *Id.* ¶¶ 11-12.[9]

Plaintiff was notified that she could appeal Defendant's determination relating to the MEDCOM Documents, and Plaintiff exercised that right. Def.'s Stmt. ¶¶ 30-31. On July 22, 2009, after reviewing Plaintiff's entire file and the six pages of documents, the Office of the General Counsel concurred in the initial determination.[10] *Id.* ¶ 34.

> e. The 21st TSC Documents

Of the 132 pages located during Defendant's search, seven (7) were sent to the 21st TSC for review and response (the "21st TSC Documents"). Def.'s Stmt. ¶ 35. The seven pages

---

[9] In a memorandum to the Office of General Counsel, the MEDCOM FOIA Officer wrote that at least some of the information withheld from the MEDCOM Documents included "pre-decisional discussion pertaining to" Plaintiff among a non-exhaustive list of individuals, including members of the Staff Judge Advocate. *See* Peterson Decl. Ex. F at ¶¶ 2-3. This explanation is not incorporated into any of the sworn declarations submitted by Plaintiff, and the Court shall disregard it for purposes of this motion. In any event, the memorandum does not attempt to correlate the proffered explanation for the claimed exemption with any specific document or segments of documents. Instead, the statement relates generally to an undefined category of documents, for which Defendant has attempted to justify its actions with reference to multiple exemptions.

[10] Indeed, the Office of General Counsel found that one additional e-mail address should have been redacted on the released documents. Vaughn-Burford Decl. Ex. C.

consisted of e-mails from the 21st TSC military counsel to the Commander of LRMC, as well as certain draft documents. Craig Decl. ¶ 3; Swope Decl. ¶¶ 4-5. Defendant determined that none of the information was releasable, and withheld all seven pages citing the attorney-client privilege and the "deliberative process" privilege under Exemption (b)(5). Def.'s Stmt. ¶ 38. Plaintiff was informed of her right to appeal, but no appeal has been received to date. *Id.*

    f.  The USAREUR Documents

  Of the 132 pages located during Defendant's search, three (3) were initially sent to USAREUR for its review (the "USAREUR Documents"). Def.'s Stmt. ¶ 39. However, the documents were soon forwarded to the 21st TSC after it was confirmed that they belonged with that unit. Def.'s Stmt. ¶ 40. The Court cannot discern from the record the fate of those three pages.[11]

    g.  The WRAMC Documents

  Finally, of the 132 pages uncovered during Defendant's search, eight (8) were referred to WRAMC for its review. Def.'s Stmt. ¶ 42. Nearly a year later, when it was discovered that WRAMC had no record of the referral, Mr. England promptly re-sent the documents to WRAMC and forwarded them to MEDCOM for action. Def.'s Stmt. ¶¶ 43-44. On September 28, 2009, additional documents from this group responsive to Plaintiff's second FOIA request were

---

[11] One of Defendant's declarants avers that the USAREUR Documents were forwarded for review in conjunction with the 21st TSC Documents. Laczynski Decl. ¶ 5. If that were the case, one would expect that the declaration from the decisionmaker responsible for reviewing the 21st TSC Documents would reference a total of ten pages – seven forwarded directly from LRMC to the 21st TSC and three routed to the 21st TSC through USAREUR. Instead, that declaration references only the seven pages originally received from LRMC, Swope Decl. ¶ 4, and the Court cannot glean what happened to the three pages of USAREUR Documents from the thicket that is Defendant's motion. To the extent they were withheld, the record does not articulate the basis therefore with the requisite specificity.

produced to Plaintiff.[12]  Def.'s Stmt. ¶ 45.  Some information was withheld and/or redacted

pursuant to Exemptions (b)(5) and (b)(6), though how much is not entirely clear.  Peterson Decl.

¶¶ 14-15.  Although Plaintiff was informed of her right of appeal, Defendant has not received

one.  Def.'s Stmt. ¶ 45.[13]

        B.     *Procedural History*

Plaintiff commenced this action on August 12, 2009 by filing a Complaint with the Court,

*see* Compl., Docket No. [1], a copy of which was served upon Defendant, *see* Return of

Serv./Aff., Docket No. [5].  On October 16, 2009, Defendant filed its [9] Motion for Summary

Judgment.  *See* Not. of Def.'s Mot. for Summ. J., Docket No. [9]; Def.'s Mem. of Law in Supp.

of Def.'s Mot. for Summ. J., Docket No. [9-1].  Plaintiff, who is appearing *pro se*, was notified

of her obligation to respond via a *Fox/Neal* Order.  *See* Oct. 19, 2009 Order, Docket No. [10].

On November 5, 2009, Plaintiff served and filed a self-styled "rebuttal" in opposition to

Defendant's motion, along with supporting documentation.  *See* Pl.'s Rebuttal to Def.'s Mot. for

Summ. J., Docket No. [11].  On November 12, 2009, Defendant served and filed a Reply to Pl.'s

Resp. to Defendant's Mot. for Summ. J., Docket No. [12], rendering the present motion fully

briefed and ripe for adjudication.  The Court has considered each of the aforementioned

submissions, and the arguments and authorities set forth therein, in rendering its decision.

---

[12]  Again, Defendant's submissions do not indicate how many and what portions of the eight pages referred to WRAMC were ultimately disclosed to Plaintiff.  Peterson Decl. ¶¶ 14-15.

[13]  Apart from these eight pages, Plaintiff apparently made a separate FOIA request to WRAMC.  Pl.'s Stmt. ¶ 4.  The propriety of that request is not before the Court.  Nor does the Court read Plaintiff's opposition papers to raise such an issue, as Plaintiff notes that "the search for records at WRAMC is just now getting underway."  *Id.*

## II. LEGAL STANDARD

In reviewing motions for summary judgment under FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). In the FOIA context, "*de novo* review requires [a] court to 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) ("the agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact.") (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Moreover, where, as here, a party is proceeding *pro se*, the court must afford that party's pleadings and submissions a "liberal construction." *Robinson v. Attorney Gen. of U.S.*, 534 F. Supp. 2d 72, 76 n.2 (D.D.C. 2008).

Congress enacted FOIA for the purpose of introducing transparency into government activities. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 88 (D.C. Cir. 1984). Congress remained sensitive, however, to the need to achieve balance between this objective and the vulnerability of "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,

975 F.2d 871, 872 (D.C. Cir. 1992), *cert. denied*, 507 U.S. 984 (1993); *accord Summers*, 140 F.3d at 1079. For this reason, FOIA provides nine exemptions pursuant to which an agency may withhold requested information. *See* 5 U.S.C. § 552(b)(1)-(9). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that it has fully discharged its obligations is summary judgment appropriate, *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). With these principles in mind, the Court turns to the merits of Defendant's motion.

## III. DISCUSSION

A.    *The Adequacy of Defendant's Search*

An inadequate search for records constitutes an improper withholding under FOIA, *see Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003), and thus the threshold question raised by Plaintiff's submissions is the adequacy of Defendant's search for documents responsive to her second FOIA request – *i.e.*, documents and records relating to Plaintiff's employment at LRMC.[14] Where the adequacy of an agency's search is challenged, the agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

1.    The Reasonableness of Defendant's Search

In determining the adequacy of a search, the Court is guided by principles of reasonableness. *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27-28 (D.C. Cir. 1998); *see also*

---

[14] Because Defendant located and produced the only document sought by Plaintiff with respect to her first FOIA request, the adequacy of that search is not at issue.

*Weisberg*, 705 F.2d at 1351 ("The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case.") (internal citations and quotation marks omitted). Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search," *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir.) (citations omitted), *cert. denied*, 552 U.S. 1007 (2007). Nor must an agency search every record system to render its search reasonable. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *but see Campbell*, 164 F.3d at 28 (agency cannot limit its search to one record system where others are likely to reveal responsive information). In sum, perfection is not the standard. Instead, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

On a motion for summary judgment, an agency may discharge its burden of establishing the reasonableness of its search by submitting a "reasonably detailed affidavit" describing the search performed and averring that all files likely to contain responsive documents were searched. *Id.* The D.C. Circuit Court of Appeals has described the agency's evidentiary burden more fully as follows:

> The affidavits of the responding agency [need not] set forth with meticulous documentation the details of an epic search for the requested records. Rather, in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.

13

*Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). To be sufficiently detailed, the agency's affidavits must at a minimum describe "what records were searched, by whom, and through what process." *Steinberg*, 23 F.3d at 552.

Here, Defendant appropriately relies upon the declaration of Mr. England, who was responsible for coordinating the search for documents responsive to Plaintiff's FOIA requests. *See SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (noting that the individual coordinating the search "is the most appropriate person to provide a comprehensive affidavit"). For at least three reasons, the content of that declaration suffices to discharge Defendant's burden.

First, Mr. England avers that, in conducting his search, he contacted the Commander of LRMC, the Deputy Commander for Clinical Services, Pathology, the Radiology Department, the Personnel Division, Operations, Credentials, and the former Chief of Radiology requesting information pursuant to Plaintiff's request. Def.'s Stmt. ¶ 18; England Decl. ¶ 13. These sources are precisely those that could be "reasonably expected" to produce information responsive to Plaintiff's requests for "personnel records" and "documents and records related to [her] employment." England Decl. Ex. L.

Second, Mr. England describes in considerable detail the issues that arose during the course of Defendant's search, and the remedial steps that he took to ensure that no responsive documents were overlooked. Specifically, after learning that no one working at LRMC's Radiology Department had any knowledge of records relating to Plaintiff, Mr. England may have simply concluded that no such documents existed. Instead, he reached out to Plaintiff's former supervisor to inquire where such documents might be kept. Def.'s Stmt. ¶ 17; England Decl. ¶¶

14

18-19.  *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999) ("When all other sources fail to provide leads to [a] missing record, agency personnel should be contacted if there is a close nexus . . . between the person and the particular record.").  Using the information obtained from Plaintiff's former supervisor, staff in the Radiology Department conducted a second search in an attempt to locate responsive documents.  England Decl. ¶¶ 18-19.  Similarly, when Plaintiff expressed a concern that Defendant's initial production lacked documents in the period extending from May 2008 through June 2008, Mr. England requested that two individuals identified by Plaintiff conduct a further search of their computers for responsive documents.  *Id.* ¶ 28.  Although that search yielded no additional documents, it is axiomatic that the reasonableness of an agency's search does not hinge upon the resulting harvest.  *See Ford v. U.S. Dep't of Justice*, Civ. A. No. 07-1305 (CKK), 2008 WL 2248267, at *4 (D.D.C. May 29, 2008) ("An agency's lack of success in locating responsive records does not render the search inadequate when the agency's supporting declarations establish its compliance with FOIA.").

Finally, Mr. England's declaration, going beyond simply averring that all files likely to include responsive documents were searched, provides that the 132 pages of documents he located comprised the only documents maintained by Defendant that were responsive to Plaintiff's request.  Def.'s Stmt. ¶ 17; England Decl. ¶ 20.

That Defendant's submissions could have hypothetically been more detailed – for example, in describing the geographic location of certain files – does not prevent the Court from concluding that Defendant has satisfactorily demonstrated the adequacy of its search, nor preclude a finding that summary judgment is appropriate.  *See Perry*, 684 F.2d at 127 ("To be

sure, the descriptions of the searches could have been more detailed . . . . The arguable inadequacy of the search descriptions here is, however, no more than marginal and does not render the grant of summary judgment inappropriate."). Because the record evidences that Defendant conducted an informed, detailed, and good faith search of sources likely to reveal documents responsive to Plaintiff's second FOIA request, the Court finds that there is no genuine issue as to the reasonableness of Defendant's search. .

### 2. Plaintiff's Allegations of Bad Faith

Once an agency has made a *prima facie* showing of adequacy, the burden shifts to the plaintiff to provide "'countervailing evidence' as to the adequacy of the agency's search." *Iturralde*, 315 F.3d at 314; *see also Weisberg*, 705 F.2d at 1351-52 (once the agency has discharged the burden of demonstrating the adequacy of its search, its position may be rebutted only by a showing that the search was not made in good faith). Indeed, the plaintiff must provide evidence sufficient to raise "substantial doubt" concerning the adequacy of the agency's search. *Iturralde*, 315 F.3d at 314 (citing *Valencia-Lucena*, 180 F.3d at 326)). In opposing the present motion, Plaintiff raises a number of allegations purportedly going to Defendant's good faith in responding to her FOIA requests, none of which are of any avail here.

### a. Defendant's Underlying Conduct

As an initial matter, the vast majority of Plaintiff's allegations are simply immaterial to the question of whether Defendant acted in good faith in conducting its search for responsive documents. Specifically, Plaintiff contends that Defendant acted in bad faith by: (a) improperly submitting a second Officer Evaluation Report for Plaintiff (a so-called "referred OER"); (b) stating in the referred OER that Plaintiff was reprimanded for unprofessional conduct; (c)

refusing to allow Plaintiff to provide input regarding the incident underlying the aforementioned reprimand; (d) permitting a junior officer to author Plaintiff's letter of reprimand; (e) making false statements with respect to Plaintiff's PPE; (f) altering Plaintiff's PPE after it had already been made part of Defendant's official record; and (g) failing to "restore [her] reputation" after she was reprimanded in the presence of junior officers.[15] Pl.'s Stmt. ¶¶ 7-8, 10-14. Each of the foregoing allegations goes to the propriety of Defendant's underlying conduct *vis-a-vis* Plaintiff during the course of her employment, or shortly thereafter, and have no bearing upon the only question now before the Court: *i.e.*, whether Defendant has adequately discharged its obligations under FOIA. Simply put, a plaintiff cannot challenge the adequacy of a search based on the underlying actions that are the subject of the request; rather, he or she must "challenge the adequacy of a search by arguing that *the search itself . . .* was conducted in bad faith." *Accuracy in Media, Inc. v. Nat'l Transp. Safety Bd.*, Civ. A. No. 03-24 (CKK), 2006 WL 826070, at *9-10 (D.D.C. Mar. 29, 2006) (emphasis added); *see also Weisberg*, 705 F.2d at 1360 (allegations regarding the propriety of the investigation subject to plaintiff's FOIA request "too attenuated and unsubstantiated to raise a genuine issue of material fact concerning the [agency's] compliance with its FOIA obligations"); *Western Ctr. for Journalism v. Internal Revenue Serv.*, 116 F. Supp. 2d 1, 10 (D.D.C. 2000) (plaintiff's allegations that underlying audit was "politically inspired" immaterial to adequacy of agency's search), *aff'd*, 22 Fed. Appx. 14 (D.C. Cir. 2001).[16]

---

[15] Additionally, Plaintiff has appended to her opposition papers a number of documents apparently going to the propriety of certain employment actions undertaken by Defendant with respect to Plaintiff. Pl.'s Stmt. Exs. 3, 5-12.

[16] One can imagine the case where the agency's underlying actions may be relevant to the question of whether the search was adequate and undertaken in good faith – *e.g.*, when a plaintiff presents credible evidence of a concerted "cover-up" on the agency's part – but this is not such a

As such, each of Plaintiff's allegations, even if hypothetically coupled with adequate record

support, would be insufficient to rebut Defendant's showing that its search was reasonable and

undertaken in good faith.

b.　　Delays in Defendant's Response

Plaintiff next intimates that a finding of bad faith may rest upon the contention that

certain documents – the WRAMC Documents – "were not forthcoming" from Defendant, and

were sought out only after Plaintiff had filed the Complaint in this action.  Pl.'s Stmt. ¶ 3.

Plaintiff's argument fails for two independent reasons.  First, courts routinely find that delays in

responding to FOIA requests are not, in and of themselves, indicative of agency bad faith.  *See,*

*e.g.*, *Iturralde*, 315 F.3d at 315 ("initial delays in responding to a FOIA request are rarely, if ever,

grounds for discrediting later affidavits by the agency"); *Fischer v. U.S. Dep't of Justice*, Civ. A.

No. 07-2037 (ESH), 2010 WL 2745811, at *3 (D.D.C. July 13, 2010) (rejecting argument that

agency's failure to produce documents until after litigation commenced evidenced agency's bad

faith).  Second, Plaintiff's characterization of Defendant's conduct is belied by the record:

---

case.  Elsewhere, Plaintiff states that she corresponded with Defendant in the time period during
which Mr. England was conducting Defendant's search, expressing her intent to appeal
Defendant's decision to place a letter of reprimand in her personnel file.  Pl.'s Stmt. ¶ 2 and Exs.
1-3.  The import of Plaintiff's allegation is not entirely clear.  To the extent Plaintiff intends to
suggest that Defendant was motivated by bad faith as a result of Plaintiff's use of internal dispute
resolution procedures, Plaintiff offers no evidentiary support that would suggest that Mr. England
(or anyone else involved in the search) was motivated by bad faith as a result, and Plaintiff
cannot rely on conclusory and speculative assertions to raise "substantial doubt" as to the
propriety of Defendant's search.  Meanwhile, to the extent Plaintiff intends to suggest that such
correspondence should have been, but was not, produced in response to her requests, Defendant
is correct that it is not duty-bound to account for documents which a requester has in some way
identified, provided it has made a diligent search for documents in those places where they might
be expected to be found.  *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir.
2003) ("After all, particular documents may have been accidentally lost or destroyed, or a
reasonable and thorough search may have missed them.").

Defendant's submissions stand uncontradicted in explaining that the delay in securing review of the WRAMC Documents was the result of a simple administrative error.[17]

### c.     Discrepancies in Page Counts

Plaintiff further argues that summary judgment is inappropriate here because "[t]here is conflicting information with respect to the number of documents that have been produced." Pl.'s Stmt. ¶ 1. In one respect, Plaintiff is correct. On the record before it, the Court simply has no way of knowing how many pages were ultimately disclosed or from which unit they originated. *See supra.* Part I.A.2.d. However, while Defendant's failing in this regard prevents the Court from determining whether Defendant has properly withheld or redacted information pursuant to the claimed exemptions, *see infra.* Part III.B.1, it does not call into question the good faith of Defendant's search. *See Fischer*, 2010 WL 2745811, at *3 ("inconsistent reports" of the number of responsive documents located insufficient to warrant finding of bad faith").

### d.     Notice of Appeal

Plaintiff also contends that she never received notice from the 21st TSC informing her of her right to administrative appeal, a fact disputed by Defendant. Pl.'s Stmt. ¶ 5; Def.'s Stmt. ¶ 38. This contention also fails to raise a genuine issue as to the good faith of Defendant's search. As an initial matter, Plaintiff's allegation does not address the merits of the search itself, but

---

[17] In November 2008, Mr. England forwarded Plaintiff's request and eight pages of documents to WRAMC's FOIA Office. England Decl. ¶ 25. As it turned out, Mr. England sent his initial referral to an individual no longer employed at WRAMC. *Id.* ¶ 31. On or about September 15, 2009, upon learning that WRAMC had no record of the referral, Mr. England sought to remedy the situation and expedited the process by sending the documents and referral to MEDCOM and WRAMC that same day. *Id.*; Peterson Decl. ¶ 13. True, by that point, Defendant had already responded to some or all of Plaintiff's appeals, but the submissions by Defendant's declarants and contemporaneous correspondence evidence that the delay was the result of administrative error, and Plaintiff has put forward no evidence suggesting otherwise.

rather subsequent administrative action. Regardless, because Defendant has not pressed failure to exhaust administrative remedies as a ground for dismissal, the question of what notice Plaintiff received, and when, is immaterial to the disposition of the present motion. *See Oglesby*, 920 F.2d at 65 (only where agency's initial response complies with statutory requirements, including notifying the requester of the right to appeal adverse decisions to the head of the agency, may the requester's foregoing of an administrative appeal preclude future suit) (citing 5 U.S.C. § 552(a)(6)(A)(i)). Regardless of whatever administrative rights Plaintiff may have had, she has not been denied a right to be heard before the courts.

e.     Redaction of the PPE

Finally, Plaintiff argues that Defendant wrongfully redacted the signature block from the PPE. Pl.'s Stmt. ¶ 9. Again, Plaintiff's allegation does not impugn the search itself. In any event, it is undisputed that Defendant voluntarily released the contents of the signature block upon further review, Def.'s Stmt. ¶ 12, a fact that, if anything, speaks to Defendant's good faith in responding to Plaintiff's requests.

B.     *Defendant's Claimed Exemptions*

"If an agency invokes an exemption, it bears the burden of establishing the applicability of the claimed exemption," *Assassination Archives*, 334 F.3d at 57, and the agency's justification must be "logical" or "plausible," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). Thus, having determined that Defendant has carried its burden of showing that it conducted a search reasonably calculated to uncover responsive documents, and having found that Plaintiff has failed to adduce sufficient evidence in rebuttal to raise a substantial doubt as to Defendant's good faith, the Court now turns to the question of the propriety of Defendant's decision to

withhold or redact certain information.

1.      Adequacy of Defendant's *Vaughn* Index

Before addressing the substance of Defendant's claimed exemptions, however, the Court

again pauses to assess the sufficiency of Defendant's evidentiary showing.  Generally, the Court

may award summary judgment to an agency solely on information provided in affidavits or

declarations, provided, however, that the agency's submissions: (a) set forth a "relatively

detailed" justification; (b) specifically identify the reasons why a particular exemption is

relevant; and (c) correlate those claims with the particular part of a withheld document to which

they apply.  *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006)

(internal quotation marks and notations omitted) (citing *Mead Data Cent., Inc. v. U.S. Dep't of

Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).  The import of such submissions, often loosely

referred to as "*Vaughn* indices"[18] is clear: "[t]he agency would . . . have a nearly impregnable

defensive position save for the fact that the statute places the burden 'on the agency to sustain its

action.'" *Judicial Watch*, 449 F.3d at 146 (quoting 5 U.S.C. § 552(a)(4)(B)).

The precise form of the *Vaughn* index is immaterial.  *Judicial Watch*, 449 F.3d at 145;

*see also Accuracy in Media*, 2006 WL 826070, at *4 ("There is no set formula for a *Vaughn*

index").  Instead, the adequacy of the agency's *Vaughn* index is assessed in accordance with the

three interrelated functions it is designed to serve: (a) to force the agency to carefully analyze any

information withheld; (b) to enable the district court to fulfill its duty of evaluating the

---

[18]  In *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974),
the D.C. Circuit Court of Appeals provided that agencies should generally prepare an itemized
index correlating each withheld document (or portion thereof) with a specific FOIA exemption
and the agency's justification for non-disclosure.

applicability of claimed exemptions; and (c) to empower the plaintiff to present his case to the district court. *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987). Ultimately, however, "[s]pecificity is the defining requirement of the *Vaughn* index and affidavit." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).

Though the question of how particularized the agency's showing must be in a given context has at times beguiled litigants and courts alike, it is clear that, with respect to four categories of documents – *i.e.*, the LRMC Documents, the MEDCOM Documents, the USAREUR Documents, and the WRAMC Documents – the Defendant's *Vaughn* index (if it may even be characterized as such) falls short of fulfilling the functional ends set forth in decades of jurisprudence.[19]

Plaintiff's most detailed (though still deficient) description concerns the 108 pages of the LRMC Documents. In describing the exemptions claimed, Mr. England's declaration provides, in relevant part:

> Enclosed with the request were one hundred and eight (108) pages of documents responsive to the request. The documents included emails, Officer Evaluation Reports, [Plaintiff's] orders, Memoranda for Record, a letter of Reprimand and a Rebuttal to the Reprimand. The documents were redacted in accordance with FOIA Exemptions (b)(5) and (b)(6). These redactions were third-party personal information, exempt under Exemption (b)(6). [Plaintiff's] file contained e-mail correspondence relating to an incident involving [Plaintiff] and what the proper response to her chain of command to this incident would be; Plaintiff eventually received the above-listed Letter of Reprimand. I redacted these pre-decisional email discussions under Exemption (b)(6).

England Decl. ¶ 21. Similarly, a second declarant for Defendant, after conflating the LRMC

---

[19] On the other hand, because the Court concludes that it has sufficient information to evaluate the Defendant's claims of exemptions with respect to the PPE and the 21st TSC Documents, those categories are addressed below. *See infra.* Part III.B.2.

Documents and the MEDCOM Documents, avers that (a) some unknown portion of those documents included pre-decisional e-mail correspondence regarding "the agency decision-making process in regard to aspects of Plaintiff's employment," and (b) some unknown portion included "names and email addresses of certain individuals." Buchholz Decl. ¶¶ 11-12, 18.

Defendant described the MEDCOM Documents and the WRAMC Documents with a similarly cavalier approach. In both instances, although the record suggests that some number of documents were produced, and portions thereof were withheld and/or redacted pursuant to Exemptions (b)(5) and (b)(6), *see* Peterson Decl. ¶¶ 8-9, 14-15; Buchholz Decl. ¶¶ 11-12, 16-18, Defendant's submissions are utterly lacking in specificity. Meanwhile, with respect to the USAREUR Documents, the Court has already described how, based on the record created by the parties, it is simply incapable of discerning the ultimate fate of the three pages within that category. *See supra.* Part. I.A.2.f. What portion of those documents (if any) were withheld, and the basis for the withholding, has not been made clear to this Court.

Simply put, Defendant's descriptions are so sweeping as to prevent the Court (and Plaintiff) from fully evaluating its claims to privilege with respect to the LRMC Documents, the MEDCOM Documents, the USAREUR Documents, and the WRAMC Documents. *See Maydak*, 254 F. Supp. 2d at 35 (agency's submissions "too conclusory, vague and sweeping to support summary judgment" where agency relied on multiple exceptions to justify withholding information, but failed to match the withheld information with the claimed exemption and explain how the exemption applied). Moreover, Defendant invariably failed to correlate the claimed exemptions with specific documents (or portions thereof) and, in most instances, neglected to describe in reasonable detail the contents of the withheld documents.

At their core, Defendant's submissions reduce to a blanket assertion that it properly redacted some unknown portion of responsive documents that included personal information and some unknown portion of e-mail correspondence relating to Plaintiff's employment. The Court, however, is not free to accept an agency's *ipse dixit* regarding the propriety of its decisions. *Cf. Vaughn v. Rosen*, 484 F.2d 820, 825-26 (D.C. Cir. 1973) (rejecting the government's claim that "all it need[s] to do to fulfill its burden is to aver that the factual nature of the information is such that it falls under one of the exemptions."), *cert. denied*, 415 U.S. 977 (1974). Defendant must present this Court with sufficient detail and context to assess those decisions. *See King*, 830 F.2d at 221. Moreover, at the very least, Defendant's descriptions are too vague and non-specific to evidence that it carefully analyzed all information withheld. *Id.* Indeed, it appears from Defendant's submissions that broad categories of disparate information were potentially lumped together without thoughtful analysis. That may very well not be the case, but Defendant has failed to provide this Court with sufficient information to conclude otherwise at this stage of the proceedings.

Perhaps most importantly, Defendant's submissions do not give this Court enough information to conduct an adequate segregability analysis, as it must. An agency has the burden of detailing what proportion of a document is non-exempt, and how that material is dispersed through the document, *Mead Data*, 566 F.2d at 261, and where an agency's submission does not specify which portions of the documents withheld are disclosable and which are allegedly exempt, it does not even qualify as a *Vaughn* index, *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir.), *cert. denied*, 525 U.S. 891 (1998); *see also Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (agency's submissions, rather than proceeding document

by document, should have correlated claimed theories with the particular textual segments withheld). Here, Defendant has not even offered an unequivocal averment that it conducted a thorough segregability analysis and that, after each individual document was reviewed, all reasonably segregable information was released to Plaintiff.

The Court pauses to observe that, notwithstanding the foregoing, an agency is not precluded from grouping categories of documents that merit similar treatment when preparing its *Vaughn* index. Used properly, abstraction may actually assist a court in reviewing the agency's actions. *Judicial Watch*, 449 F.3d at 147. However, the essential point is that the agency must, at the very least, "explain[] itself through *commonalities*, not *generalities*," and explain why the exemption applies to the document (or type of document) withheld while affording due attention to the contents of the withheld information. *Id.* (emphasis in original); *compare Keys*, 830 F.2d at 349-50 (agency situated each document into its historical context and adequately explained exemptions through use of "functional categories"), *and Judicial Watch*, 449 F.3d at 146-47 (agency specifically identified individual documents, with detailed data regarding their source and nature, and supplemented its index with a declaration focusing on categories of information and how they related to claimed exemptions), *with King*, 830 F.2d at 220-21 (agency's annotated catalogue of documents, failing to correlate the claimed exemption to redacted documents, was "unhelpfully categorical").[20] While the difficulty of assessing the sufficiency of an agency's

---

[20] In *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1123 (D.C. Cir. 2007), the agency's itemized *Vaughn* index failed to match each redaction with a specific exemption, but did "identify the exemptions claimed for each individual document." Although criticizing the agency's approach as less than fulsome in tying together the documents at issue with the claimed justification, the court concluded that the agency conveyed enough information "to identify the records referenced and [to] understand the basic reasoning behind the claimed exemptions." *Id.* Here, in contrast, Defendant's failure to provide anything remotely approaching an itemized

submissions will no doubt increase the farther one departs from the extremes, what is clear is that an agency cannot couple a sweeping categorical description of the withheld information with a categorical explanation of the justification for non-disclosure and hope to prevail on summary judgment. *King*, 830 F.2d at 224. Because that is all Defendant has offered as of this stage in the proceedings, the Court is compelled to deny Defendant's Motion for Summary Judgment as it relates to (a) the LRMC Documents, (b) the MEDCOM Documents, (c) the USAREUR Documents, and (d) the WRAMC Documents.

The Court, however, expresses no view on the validity of the underlying withholding decisions concerning these documents. To permit the Court to assess those decisions, Defendant must first identify with reasonable specificity the information withheld from each document (*e.g.*, the e-mail addresses of recipients, draft language for Plaintiff's letter of reprimand, etc.), set forth a reasonably detailed justification for invoking the exemption, and correlate the claimed justification with the specific information withheld (*i.e.*, explain why the exemption applies in the given context). Until Defendant has done so, this Court is in no position to opine on the merits of Defendant's claims.

---

index prevents such a conclusion. Nor is this an instance where the Court can excuse the failure to provide an itemized index, as Defendant has claimed multiple exemptions to an unknown number of potentially overlapping documents. *See Tax Analysts v. Internal Revenue Serv.*, 414 F. Supp. 2d 1, 3-4 (D.D.C. 2006) (finding an itemized *Vaughn* index unnecessary where all the records at issue fell under a single exemption, and agency had outlined the categories of the documents withheld and the circumstances of their creation); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) ("The source, subject matter, and nature of each document were described separately, and although not individually stated for each document, it is clear from the nature of the documents and the single exemption asserted which justifications apply to which documents.").

## 2.     Exemptions Claimed for the Remaining Documents

Despite the issues outlined above with respect to Defendant's *Vaughn* index, the Court concludes that Defendant has adduced sufficient evidence on the present motion to allow the Court to assess the exemptions claimed by Defendant with respect to two sets of documents: (a) the PPE; and (b) the 21st TSC Documents.  Before proceeding, the Court reiterates that the agency bears the burden of establishing the applicability of any claimed exemption, *Assassination Archives*, 334 F.3d at 57, and notes that, given the statutory design, "exemptions from disclosure must be narrowly construed, and conclusory and generalized allegations of exemptions are unacceptable," *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007) (internal citations and quotation marks omitted).

### a.     The PPE and Exemption (b)(6)

Exemption (b)(6) applies to "personnel and medical files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).   It has repeatedly been held that "information such as names, addresses, and other personal identifying information [may] properly [be] withheld because it creates a palpable threat to privacy." *Yelder v. U.S. Dep't of Defense*, 577 F. Supp. 2d 342, 346 (D.D.C. 2008) (internal quotation marks omitted) (citing *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).  Here, Defendant initially redacted the signature block and the e-mail address from the final page of the three-page PPE, citing FOIA Exemption (b)(6).  Def.'s Stmt. ¶ 6.  Upon further consideration, Defendant released the contents of the signature block, but continued to withhold the e-mail address.  *Id.* ¶ 12.  Plaintiff has pointed to no public interest in disclosing the e-mail address, and the Court concludes there is no such interest sufficient to outweigh the privacy interest involved.

*Cf. Yelder*, 577 F. Supp. 2d at 346 (invasion of privacy unwarranted where public interest is "sufficiently weaker").  Moreover, the Court concludes, and Plaintiff does not actually dispute, that Defendant has detailed which portions of the PPE are disclosable, and has produced all reasonably segregable portions.[21]  As such, the Court shall grant Defendant's Motion for Summary Judgment with respect to the PPE.

> b.      The 21st TSC Documents and Exemption (b)(5)

Exemption (b)(5) governs "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The exemption incorporates both the traditional privilege attaching to confidential communications between an attorney and client relating to a legal matter for which the client has sought professional advice, *Mead Data*, 566 F.2d at 252-53, as well as what is often referred to as the "deliberative process" privilege, which exempts from disclosure elements of the agency's decisionmaking process, *SafeCard*, 926 F.2d at 1204.

Here, of the 132 pages located during Defendant's search, seven – *i.e.*, the 21st TSC Documents – consisted of e-mail correspondence between the 21st TSC military counsel and the Commander of LRMC, and certain draft documents.  Craig Decl. ¶ 3; Swope Decl. ¶¶ 4-5. Defendant determined that none of the information contained in the seven pages was releasable, citing the attorney-client privilege and the deliberative process privileges.  Def.'s Stmt. ¶ 38. Although Defendant avers that one party to the communications at issue was military counsel,

---

[21]  Even where they are not specifically raised by the parties, district courts are obligated to consider segregability issues *sua sponte. Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  FOIA requires that an agency produce "any reasonably segregable portion" of a record that is not exempt from disclosure.

Craig Decl. ¶ 3; Swope Decl. ¶¶ 4-5, Defendant has failed to present any evidence demonstrating

the confidential nature of the communications, or showing that they were made for purposes of

seeking or rendering legal advice.  *See Mead Data*, 566 F.2d at 254 (agency's description, stating

only the subject, source, and recipient of the communications, provided no indication as to the

confidentiality of the information on which they were based).  Similarly, while the "drafts"

referenced by Defendant may very well fall within the ambit of the "deliberative process"

privilege, Defendant fails to describe the contents of those drafts or how they relate to a specific

agency decision.[22]  *See SafeCard*, 926 F.2d at 1204 (to invoke the deliberative process privilege,

"the agency must describe not only the contents of the document but also enough about its

context, *viz.* the agency's decisionmaking process," including whether the document explains,

directly or by reference, the reason for the agency's decision); *Maydak*, 254 F. Supp. 2d at 37

(faulting agency for failing to identify the decision or policy to which the withheld information

purportedly contributed and explain how it fit into the deliberative process).  Without such

context, the Court is unable to assess the validity of Defendant's claims, *see Morley*, 508 F.3d at

1127 (summary judgment inappropriate where "minimal information" provided as to whether

agency properly applied Exemption (b)(5)), and the Court shall therefore deny Defendant's

Motion for Summary Judgment with respect to the 21st TSC Documents.

As before, the Court expresses no view on the validity of the underlying withholding

decisions concerning these documents.  Defendant must first identify with reasonable specificity

the information withheld from each document, set forth a reasonably detailed justification for

---

[22]  Although mindful of the possibility that both sets of documents were created in the
context of fashioning an appropriate response to an employment-related issue involving Plaintiff,
Defendant does not establish that connection in its submissions.

invoking the exemption, and correlate the claimed justification with the specific information withheld.

      *C.*      *Plaintiff's Request for Discovery and* In Camera *Review*

Finally, the Court construes Plaintiff's submissions as requesting an order that discovery be had or, in the alternative, that the Court review the documents at issue *in camera*. In the FOIA context, a district court has broad discretion in denying both discovery and *in camera* review. *See SafeCard*, 926 F.2d at 1205 (discovery); *Boyd*, 475 F.3d at 382 (*in camera* review). In an exercise of its discretion, the Court shall deny Plaintiff's requests at this time, with leave to renew after Defendant has had an opportunity to supplement its Motion for Summary Judgment with appropriate supporting materials.

## IV. CONCLUSION

For the foregoing reasons, the Court shall therefore GRANT-IN-PART Defendant's [9] Motion for Summary Judgment with respect to the PPE, and DENY-IN-PART Defendant's motion with respect to the LRMC Documents, the MEDCOM Documents, the 21st TSC Documents, the USAREUR Documents, and the WRAMC Documents. An appropriate Order accompanies this Memorandum Opinion.


Date:   September 30, 2010

                                    */s/*
                                  COLLEEN KOLLAR-KOTELLY
                                  United States District Judge